(July 22, 1993)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DELANO ALSTON, Respondent. [600 NYS2d 688] —Order of the Supreme Court, New York County (Jerome Hornblass, J.), rendered September 16, 1992, which granted defendant's motion for suppression, is reversed, on the law, the motion denied and the matter remanded for further proceedings.

The following findings were made by the suppression court after the hearing:

"On January 12, 1992, Police Officer Breen was in uniform in a marked police car. At around 10 P.M., the officer observed an individual [the defendant] enter a double-parked vehicle. He then observed another individual quickly exit a building, lean into the back seat of the car and run back into the building.

"The officer followed the vehicle as it pulled away from the curb. After observing erratic movement by the vehicle, the police car pulled up behind the vehicle. The driver then accelerated, switched lanes without signaling and the back seat passenger, the defendant, nervously looked out the rear window. The officer turned on his emergency lights and the

vehicle stopped three blocks later after being pursued for 30 to 45 seconds.

"As the officer approached the vehicle, he observed the defendant again looking over his shoulder and holding a dark object between his legs. As the officer drew nearer, the defendant pushed the object from between his legs and kicked it underneath the front seat. The officer requested the defendant to exit the vehicle and recovered the object from under the seat. That object turned out to be a loaded semi-automatic handgun. The officer then searched the defendant's person and discovered 76 bags of marijuana and two beepers. The officer informed the defendant that he was under arrest and the defendant then stated that the gun was the driver's but the drugs and beeper were his. The search of the defendant took place outside of the vehicle.

"Conclusions of law. The initial stop of the vehicle can be upheld on the basis of a traffic infraction. The officer observed the car swerving and being driven erratically and, more specifically, the vehicle changed lanes a number of times without any signal indication.

"Furthermore, the defendant's actions upon approach of the officer towards the vehicle granted the officer the right to request the defendant to step out of the vehicle.

"As noted in *People v. Torres,* 74 NY2d 224, an officer can take necessary action to protect himself from harm if he has reasonable suspicion that the defendant is dangerous and may have access to a weapon in the vehicle.

"In the instant case, the officer observed suspicious and/or nervous behavior by the defendant when he began looking out the rear window. His hand and leg motions provided the officer with sufficient suspicion that the defendant might be dangerous and the removal of the defendant from the vehicle was warranted."

However, after these findings of fact and conclusions, the court finally concluded that once defendant was removed from the reach of the weapon, the danger to the officer had passed, and the officer had no right to "search the vehicle".

This final conclusion of the suppression court overlooked the fact that after defendant kicked the "dark object" which could well have been a weapon under the front seat, the driver of the car was still in the car and had access to what was later discovered to be a semi-automatic weapon.

The court also incorrectly relied upon *People v Torres* (74 NY2d 224, *supra)* in finding that the limited search of the car,

when the officer reached under the front seat to retrieve the object, was unwarranted. In *Torres,* two suspects had already been removed from a car and the detective's conduct in reaching into the car after the "suspects had been isolated from the interior of the car", and removing a bag which revealed the presence of a gun, "was not reasonably related to the need to protect the officers' safety in this street encounter" *(supra,* at 230, 231). In this case, on the contrary, the driver was still *in the car* and the officer's action in simply reaching under the front seat and retrieving the "dark object" *was* reasonably related to the need to protect his and his partner's safety. While the dissent states that "there was no articulable basis for the supposition that the driver constituted a danger to the officers", there was testimony, accepted by the suppression court, that the driver accelerated *after* the police car pulled up behind his vehicle. Further, Officer Breen testified that after the police emergency lights and siren were turned on "to indicate to the driver to pull over", the driver kept going an *additional* three blocks when he finally "stopped the car at a screeching halt". While the dissent appears to postulate, as a measuring standard of the driver's possible danger to the officers, "reasonable suspicion by the police that the remaining occupants have been involved in any violent offense or that they might resort to violence to avoid apprehension", these actions of the driver, before he stopped the vehicle, certainly gave an "articulable basis for the supposition that [he] constituted a danger to the officers" and constituted a sufficient predicate for the limited intrusion of the officer recovering the "dark object" to safeguard himself and his partner. "Contrary to defendant's contention, our holding in *People v Torres* (74 NY2d 224) does not dictate a contrary result. There, the police proceeded to search a bag located on the front seat of a car that they had just stopped *after the suspect had been removed from the vehicle.* We concluded that, inasmuch as the police had already isolated the suspect from the bag, the search could not be said to have been 'reasonably related to the need to protect the officers' safety' *(id.,* at 231). Here, by contrast, the rather cursory examination of the bag occurred *while defendant was still sitting in the car.* Since, at that point, the bag was still within defendant's reach, the police were justified in examining it." *(People v Jackson,* 79 NY2d 907, 908-909 [emphasis in original].)

Accordingly, the limited intrusion into the car by Officer Breen in reaching under the front seat and retrieving the

object he had seen defendant kick under that seat was reasonably related to the need to protect the safety of himself and his partner, since the object (which, of course, *was* a gun) was well within the immediate reach of the driver of the vehicle who remained in the car *(see also, People v Ponce,* 182 AD2d 1103, *lv denied* 80 NY2d 836). Concur—Sullivan, Rosenberger, Asch and Rubin, JJ.

Murphy, P. J., dissents in a memorandum as follows: At the defendant's *Mapp* hearing, Police Officer Timothy Breen testified that the defendant first came to his attention when he got into the back seat of a grey Oldsmobile double-parked on 8th Avenue between 144th and 145th Streets in Manhattan. Shortly after the defendant had entered the Oldsmobile, an unidentified individual ran out of a building on 8th Avenue, leaned into the car, handed the defendant something and then returned to the building. Their curiousity apparently aroused by what they had observed, Officer Breen and his partner began to follow the Oldsmobile which had started to move south on 8th Avenue. It was Breen's testimony that just seconds after the officers began tailing the Oldsmobile in their marked police vehicle, the Oldsmobile accelerated and started changing lanes without signalling. This "erratic" vehicular activity, undoubtedly a rarity on upper 8th Avenue, purportedly caused the officers to order the Oldsmobile to pull over, which it did. As the officers approached the Oldsmobile from the rear, Breen noticed the defendant looking nervously over his shoulder and when the officers got close enough to look through the open right rear side window, they saw that there was a "dark object" resting between the defendant's legs which the defendant apparently knocked to the floor and kicked under the front passenger seat. The officers asked the defendant to get out of the car and he complied. Immediately after the defendant's removal from the car, Breen reached under the front passenger seat and retrieved a gun. The defendant was then arrested and a search of his person incident to the arrest disclosed 76 bags of marijuana.

Breen was specifically asked by the Trial Assistant, "During the course of the time that you first approached the vehicle to the time that you recovered the pistol, could you please describe the driver's behavior?" Breen replied, "Driver sat. He didn't move. He looked over his shoulder but he didn't move anything else." When asked whether he had seen the driver's hands move at all, Breen responded, "No, I did not".

Upon these facts the motion court concluded that the initial stop of the Oldsmobile could be upheld on the basis of the

above-described traffic infractions. The court further concluded that, given the defendant's suspicious behavior, the police were justified in asking him to get out of the vehicle. Once the defendant had exited the vehicle, however, and his access to any dangerous instrumentalities within it had thereby been precluded, the court was of the view that any safety-based rationale for searching the vehicle had been eliminated. The court thus held the warrantless search of the vehicle's interior illegal and granted the motion to suppress the gun and other contraband seized in reliance upon the predicate furnished by the gun.

The majority has determined to reverse the motion court's grant of suppression upon the ground that "after defendant kicked the 'dark object' which could well have been a weapon, under the front seat, the driver of the car was still in the car and had access to what was later discovered to be a semi-automatic weapon". But, of course, there is nothing in the record to support the de novo finding made by the majority that the police, prior to their actual retrieval of the weapon, saw what could well have been a weapon. Officer Breen stated only that he saw a "dark object"; he gave no indication that he was able to identify the "dark object" as a gun or anything else. Undoubtedly, Officer Breen guessed that the object might be a weapon, he did not however visually identify it as such until he removed it from under the front passenger seat. Indeed, if the "dark object" had appeared to be a weapon, this would be an entirely different case; the challenged search would be, at least arguably, possible to uphold either under the automobile exception to the warrant requirement or the plain view exception to the warrant requirement or, the search incident to arrest exception to the warrant requirement. It is presumably because the police did not know what the "dark object" was that these arguments are not made and it becomes necessary to argue instead, as the People do, that this search was one permissible as an incident of a lawful investigatory stop.

The scope of a search performed incident to an investigatory stop is, of course, strictly circumscribed: "A police officer acting on reasonable suspicion that criminal activity is afoot *and on an articulable basis to fear for his own safety* may intrude upon the person or personal effects of the suspect only to the extent that is actually necessary to protect himself from harm while he conducts the inquiry authorized by CPL 140.50 (1)." *(People v Torres,* 74 NY2d 224, 226 [emphasis added].)

In assessing whether the search at issue remained within

these plainly articulated bounds, it should be underscored that the claim made by the People is not that the defendant, following his removal from the Oldsmobile, posed any danger to the investigating officers by reason of his proximity to the "dark object"; it is apparently conceded that, as the motion court found, he did not. Rather, the claim, freshly made by the People on appeal and adopted by the majority as its ground for reversal, is instead that the *driver's* proximity to the "dark object" was a sufficient justification for the intrusion.

Even if there had been some articulable basis for the supposition that the "dark object" was a weapon, there was manifestly none for the additional gross supposition in which the majority has seen fit to indulge retrospectively, that the driver would have been inclined to retrieve any weapon possibly within his reach for use against the officers. Lest fact be completely supplanted by speculation, it should be recalled that the driver was pulled over simply for a routine traffic violation; he was suspected of no more serious offense than changing lanes without signalling and his behavior, in contrast to that of his passenger, was, as Officer Breen testified, otherwise wholly innocuous. Manifestly, there was no articulable basis for the supposition that the driver constituted a danger to the officers. And, indeed, it is plain not only that such a supposition would have been insupportable but that no such supposition was ever made; the officers were obviously completely unconcerned with the driver. Never during the *Mapp* hearing was there testimony to the effect that the officers considered themselves endangered by the driver of the Oldsmobile.

The majority's willingness to accept as true the completely unsupported contention made for the first time in the People's appellate presentation that the investigating officers had some reason to feel threatened by the driver of the Oldsmobile, leaving aside its procedural oddity, has rather unfortunate substantive implications. For once it is accepted that the driver posed a plausible threat to the officers, it follows that he too might have been frisked and the area within his grabbable reach searched. Thus, I take it that the majority would have no objection, on the present facts, to a search not merely of the place where the "dark object" had been secreted, but of any area to which the vehicle's remaining occupant could gain ready access. That the search at issue may appear to have been relatively more circumscribed, is merely indicative of the fact that the police officers perceived

no threat at all from the driver; it is certainly not indicative of the reasonableness of the intrusion. For the relevant question is not whether the police acted with more or less circumspection when they searched the Oldsmobile, but whether they could have searched the vehicle at all.

Where there is some basis to believe that the remaining occupants of a vehicle are dangerous, it is clear that officers may, in order to facilitate safe inquiry in the aftermath of a lawful investigative stop, perform a limited search of those occupants and the parts of the vehicle easily accessible to them. Thus, in *People v Jackson* (79 NY2d 907), upon which the majority relies, the search there upheld was of those parts of a car's interior accessible to two suspects in a recently reported kidnapping. Obviously, there was ample reason for the police in *Jackson* to believe that both of the suspects there involved were dangerous and, accordingly, to subject them and the vehicle in which they remained, which it may be noted closely corresponded to the description of the vehicle reportedly used in the kidnapping, to a search for accessible weapons. *Jackson,* of course, does not stand for the proposition for which it is apparently cited by the majority, that the police may search accessible areas of a lawfully detained vehicle simply because someone remains inside. There must additionally be some articulable reason for the police to believe the remaining person or persons dangerous *(see, People v Torres, supra).* This is the case even if there is some basis for the police to suspect that there is a weapon in the vehicle, for it is not the weapon alone that constitutes the danger, but rather its proximity to one disposed to use it. Obviously, the threshhold is not very high; reasonable suspicion by the police that the remaining occupants have been involved in any violent offense or that they might resort to violence to avoid apprehension would be a sufficient predicate for a search of the sort at issue, but there must be some predicate. Here there was none.

It should be underscored that the rather thinly veiled issue in this case is not whether the police could have stopped the defendant, frisked him and searched the area immediately accessible to him; it is rather whether, based upon what they knew, they could have done the same to the driver of the Oldsmobile and the area within his reach. Unless there is some doctrine of transferred dangerousness or dangerousness by reason of propinquity of which I am unaware, I am at a loss to understand the basis of the court's ruling. Surely, it can have nothing to do with the fact that, as the majority has

emphasized, the "dark object" did after all turn out to be a gun. Nor can it have anything to do with the fact that the driver changed lanes without signalling. The reality is that there was no safety-based rationale for the search of the Oldsmobile's interior; the search was quite simply a warrantless search for contraband conducted in circumstances which would not have justified the invocation of any exception to the warrant requirement.

Accordingly, the order of the Supreme Court, New York County (Jerome Hornblass, J.), which granted the defendant's motion to suppress physical evidence and statements should be affirmed.